*Decisions will be entered under Rule 50.*

MARY MILLER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOE CRISTO, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CLARA CORTESE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 40631, 40632, 40633. Filed May 13, 1954.

*Daniel W. Loeser, Esq.,* and *Philip J. Wolf, Esq.,* for the petitioners.
*James A. Scott, Esq.,* for the respondent.

294

298

OPINION.

FISHER, *Judge:* The question in this proceeding is whether cash distributions made to petitioners in 1948 in total liquidation of an "exempt" employees' retirement fund are taxable as ordinary income or capital gain to the extent that the distributions included amounts not contributed to the fund by each petitioner.

Petitioners contend that the distributions were paid on account of their separations from the service of their employer and that the amounts are taxable as capital gains pursuant to the provisions of section 165 (b) of the Internal Revenue Code.[1]

Respondent contends that the distributions were *not* paid on account of such separations from the service of their employer and that the amounts are taxable as if they were annuity payments under section 22 (b) (2) (B) of the Internal Revenue Code,[2] as incorporated into section 165 (b).

---

[1] SEC. 165. EMPLOYEES' TRUSTS.

(b) TAXABILITY OF BENEFICIARY.—The amount actually distributed or made available to any distributee by any such trust shall be taxable to him, in the year in which so distributed or made available, under section 22 (b) (2) as if it were an annuity the consideration for which is the amount contributed by the employee, except that if the total distributions payable with respect to any employee are paid to the distributee within one taxable year of the distributee on account of the employee's separation from the service, the amount of such distribution to the extent exceeding the amounts contributed by the employee, shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months.

[2] SEC. 22. GROSS INCOME.

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

*       *       *       *       *       *       *

(2) ANNUITIES, ETC.—

*       *       *       *       *       *       *

(B) Employees' Annuities.—If an annuity contract is purchased by an employer for an employee under a plan with respect to which the employer's contribution is

Petitioners were employees of the Strouss-Hirshberg Company, a department store, and participants in the company's profit sharing plan which was at all times exempt under the provisions of section 165 (a) of the Internal Revenue Code. The Corporation was obliged by the plan to pay into a trust fund, after the close of each fiscal year during the term of the plan, a certain portion of its net earnings for that year.

Pursuant to an agreement and plan of reorganization dated March 4, 1948, between the Corporation and the May Company, on the closing day under the plan, May 10, 1948, the Corporation transferred its assets and business, subject to the assumption of all outstanding liabilities, to the May Company in exchange for shares of the common stock of the May Company, which shares were distributed to the shareholders of the Corporation in cancellation of their outstanding shares. On May 13, 1948, the Corporation was dissolved as required by the agreement and plan.

The department store after May 10, 1948, was operated by the May Company under the same name as theretofore, and petitioners continued performing the same jobs as employees of the May Company as they had performed prior to that date. The intention of the parties to the reorganization was not to disrupt or change the management, policies, or personnel of the department store.

When the stockholders of the Corporation approved the plan of reorganization on March 29, 1948, they adopted a resolution to the effect that action be taken with respect to the employees' retirement fund to the end that the fund, after consummation of the plan of reorganization, might be continued independently, terminated, integrated with the retirement plan of the May Company, or otherwise provided for. After discussions with officials of the May Company, the Corporation's board of directors, in a meeting on May 7, 1948, adopted a resolution to the effect that action be taken to terminate the fund. Thereafter, pursuant to the provisions of the trust agreement (as amended on May 7, 1948, relative to termination), (1) the Corporation gave notice to the trustee and the employees on May 10, 1948, that the Corporation was discontinuing its contributions to the fund after a final contribution for the period ending May 13, 1948; and (2) the trustee proceeded to liquidate and distribute the trust assets. Accordingly, petitioners in November 1948 received cash distributions in full of all their interests in the fund. We are asked to decide whether these cash distributions were made "on account of the employee's separation from

deductible under section 23 (p) (1) (B), or if an annuity contract is purchased for an employee by an employer exempt under section 101 (6), the employee shall include in his income the amounts received under such contract for the year received except that if the employee paid any of the consideration for the annuity, the annuity shall be included in his income as provided in subparagraph (A) of this paragraph, the consideration for such annuity being considered the amount contributed by the employee. * * *

the service" so as to qualify for long-term capital gain treatment under section 165 (b) of the Internal Revenue Code.

Petitioners had certain rights under the provisions of the Trust Agreement upon termination of their services with the Strouss-Hirshberg Company. Article VII, section 3, of the Trust Agreement of the Employees' Retirement Fund states that in the event of termination of service, except under circumstances not applicable to the cases at hand, an employee shall receive full distribution benefits as provided in the case of *retirement*. The retirement provisions, article VII, section 1, permit the employee to be paid up to $500 in cash, at the discretion of the trustee, and the remainder of his distributive share in equal monthly payments ranging from 100 to 210 months, depending upon the age of the employee. This section, however, also provides as follows:

(c) Special Relief. If in the judgment of the Trustee there is some justifiable reason in the circumstances of the case for increasing the amount, and decreasing the number, of such monthly payments either to the employee or to the beneficiary, or to pay the entire amount in *one lump sum*, the Trustee has full and complete authority to make such change. [Italics added.]

Thus, as we interpret the provisions of the Trust Agreement, upon termination of their services petitioners would have become eligible, at the discretion of the trustee, to receive their full distribution benefits as follows: Either (1) a sum not exceeding $500 in cash, plus certain monthly payments thereafter, or (2) in one lump sum.

The Trust Agreement provides for precisely the same distribution benefits for petitioners upon termination of the *plan* as it does for termination of *service*. Article IX, section 2, as amended on May 7, 1948, provides for termination of the plan and states that, after the company gives notice that its contributions to the trust fund will be discontinued, the trustee shall administer the distribution of the trust estate,

(a) to the employees who have retired, or are eligible for retirement, or who have been discharged or voluntarily resigned, in accordance with all of the provisions of this agreement; and (b) to all other employees who were participating in the Trust Fund at the time such deposits and contributions were discontinued, in accordance with the provisions of Section 1 of Article VII, as if such employees had become eligible for retirement at such time.

If petitioners had been "discharged" prior to the termination of the plan under clause (a) of the above termination provision, their distribution rights ("in accordance with all the provisions of this agreement") would be determined by article VII, section 1, explained above, as in the case of retirement, since such discharge was not for misconduct (see article VII, section 3(b)). The same rights would result if petitioners had been "participating in the Trust Fund" at the time of termination of the fund under clause (b) of the above termination provision.

We, therefore, conclude that petitioners were eligible to receive the same distribution amounts in 1948 whether such distributions were made under the provisions of the agreement relating to termination of the *plan* or those relating to termination of *service*. Despite this conclusion that the payments *could* have been made for termination of either the plan or the petitioners' service, we must still decide whether or not the distributions were, in fact, made "on account of the employee's separation from the service" as the statute provides.

The phrase "separation from the service" means separation from the service of "his employer," *Edward Joseph Glinske, Jr.*, 17 T. C. 562, 565. On May 10, 1948, petitioners became the employees of the May Company and were not paid for their services thereafter by the Strouss-Hirshberg Company. We have no difficulty in finding that petitioners, on that day, had severed connections with their former employer and that there had been a "separation from the service" of that employer. Furthermore, on that day they became eligible to receive distribution of their shares under the terms of the Trust Agreement because of their termination of service with the Corporation. The actions to dissolve the Corporation and to terminate the fund in no way affected petitioners' rights at that time to receive their distributive shares of the fund.

Officials of the Corporation, anticipating the result of selling the business, conferred with officials of the May Company before deciding upon a proper course of action with respect to the retirement fund. Thereafter it was decided to terminate the fund. Because the Corporation was about to lose all of its employees and was obliged to dissolve immediately, this was a reasonable and logical decision. The trustee's exercise of its judgment and authority to pay the distributive shares to petitioners in *one lump sum* under these circumstances, as provided in the Trust Agreement, is also reasonable and logical. The situation is therefore one where petitioners' rights to receive distributions of their shares of the fund arose "on account of" their separation from the service of their employer, but the actual equivalent distribution of those shares was made in the course of terminating the fund.

We believe that the requisite causal connection between (1) the total distributions payable, which were paid within one taxable year, and (2) petitioners' termination of service with the Strouss-Hirshberg Company, is established by the facts in this case. We therefore hold that the distribution to each petitioner in 1949 was paid "on account of the employee's separation from the service," and that the amount of such distribution to the extent exceeding the amounts contributed by each petitioner is taxable as a long-term capital gain.

Respondent contends that we are required to reach a contrary conclusion because of our holding in *Edward Joseph Glinske, Jr., supra.*

That case involved a situation where petitioner's employer sold all of its assets and "discontinued business." Petitioner continued in the employ of the purchaser. Three weeks later, the "new management" exercised its right under the trust agreement to discontinue the plan in its entirety. Petitioner received his distributive share in two payments, one in 1946 and one in 1948. We held in that case that the payment received in 1946 was taxable as ordinary income to the petitioner.

The circumstances in the *Glinske* case differ from the case at hand in several material respects:

(1) The distributions to that petitioner were *not* paid in "one taxable year of the distributee" as required by the capital gain portion of section 165(b) of the Internal Revenue Code. This fact alone made the distributions to that petitioner taxable as annuities and not as capital gain, regardless of the reason for the distributions.

(2) Under the terms of the pension trust agreement, petitioner Glinske was *not* entitled to receive the same benefits upon termination of employment as he was upon termination of the plan. Upon termination of *employment* in 1946, petitioner, who was then 39 years old, would not have been entitled to receive his annuity contracts, or the proceeds thereof, until the anniversary date of the plan nearest his forty-fifth birthday. Upon termination of the *plan*, however, the trustee was required to "set over to the employees" the annuities, or the proceeds thereof, at that time. It was under the latter provision that distribution was made to that petitioner in 1946.

(3) The fact that petitioner's employment with the *seller* company was severed was immaterial to the *Glinske* case, not only because the distributions were *not* made within one taxable year, but also because the distributions were not made "on account of the employee's separation from the service" of that employer. The facts found by the Court indicated that the purchaser assumed the plan and retained it for a short period of time thereafter. It was while petitioner was in *its* employ that purchaser terminated the plan which resulted in the distributions. There was no separation from the service of purchaser and it was purchaser, not seller, who terminated the plan. In the instant case, the May Company did *not* assume the Trust Agreement.

On the basis of the facts in the instant cases, we hold that the distributions to petitioners were paid "on account of" their separation from the service of the Strouss-Hirshberg Company.

Reviewed by the Court.

> *Decisions will be entered for the petitioners in Docket Nos. 40631 and 40633.*
> *Decision will be entered under Rule 50 with respect to Docket No. 40632.*