OPINION. Murdock, Judge: Section 165(b) of the Internal Revenue Code of 1939 provides that amounts actually distributed or made available to any distributee by any pension trust shall be taxable to bim in the year in which distributed or made available, under section 22 (b) (2) as if it were an annuity, consideration for which is the amount contributed by the employee, except that if the total distributions payable with respect to any employee are paid to the distributee within 1 taxable year of the distributee “on account of the employee’s separation from the service, the amount of such distribution to the extent exceeding the amounts contributed by the employee, shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months.” The petitioner contends that the amount received by Edward is taxable as long-term capital gain because it was all paid to Edward at one time on account of Ms separation from the service of Knitwear, i.e., lie ceased to be a salesman after tire 1952 season. Actually, no money was distributed to Edward from the pension trust. The stipulation is that an annuity policy was released to him by the trustees of the pension trust and he received the cash proceeds of that policy on November 10, 1952. The policy was released to Mm on September 25, 1952. The Commissioner’s Regulations 111, section 29.165-6, state that if the total distribution is paid the employee in 1 year “in which he retires or severs Ms connection with his employer” the amount shall be taxed as long-term capital gain. Revenue Ruling 56-214, 1956-1 C.B. 196, states that such separation must be a complete termination of the employment relationship. The Commissioner has taken the position here that the amount in question was not paid to Edward because of the severance of Ms connection with Ms employer but was paid to him because of the discontinuation of the pension plan. The petitioner does not contend that the amount would be taxable other than as ordinary income if the distribution was made because of the discontinuance of the pension plan instead of because of Edward’s separation from the service of Knitwear. Decision in this case, therefore, seems to turn upon the narrow question of whether the distribution of the contract to Edward was on account of Edward’s separation from Knitwear or whether it was on account of dissolution of the pension plan. That question must be decided on the facts in the record. The two possibilities are rather closely related. Cf. Mary Miller, 22 T.C. 293, affd. 226 F. 2d 618. The evidence shows that Edward never severed his connection with Knitwear until the date of Ms death. The pension plan expressly provided that an officer would be recognized as an employee for the purpose of the pension plan. Edward continued to be an officer of Knitwear until he died. The return of Knitwear for its fiscal year ended October 31, 1953, shows the payment of $750 salary to Edward as president and $750 to Lacob as treasurer. The total of $1,500 was deducted as “Compensation of officers.” Edward on his return for the calendar year 1952 shows as compensation received from Knitwear $12,315.85, but no breakdown thereof. The determination of the Commissioner is presumed to be correct. The record fails to show that either the cash or the annuity contract was received by Edward as a distribution from the pension plan or trust on account of his separation from the service of Knitwear. Consequently, decision on this point must be for the Commissioner. Harry K. Oliphint, 24 T.C. 744, affd. 234 F. 2d 699; Estate of Frank B. Fry, 19 T.C. 461, affd. 205 F. 2d 517. Cf. Edward Joseph Glinske, Jr., 17 T.C. 562; Mary Miller, supra. Decision will be entered wnderRule 50.