E. N. FUNKHOUSER, AND ESTATE OF NELLIE S. FUNKHOUSER, DECEASED, E. N. FUNKHOUSER, EXECUTOR, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2808–63.   Filed May 13, 1965.

*John S. McDaniel,* for the petitioners.
*Stuart E. Seigel* and *Charles F. T. Carroll,* for the respondent.

OPINION

RAUM, *Judge:* The Commissioner determined a deficiency in income tax in the amount of $30,344.34 against E. N. Funkhouser and Nellie

S. Funkhouser, husband and wife, for their calendar year 1959. They resided in Hagerstown, Md., and had filed joint returns with the district director at Baltimore. The wife has since died, and the husband appears here as petitioner both in his own right and as representative of his wife's estate. The only issue presently requiring an adjudication by this Court is whether two distributions to petitioner in 1959 totaling $56,761.13 from an employee pension trust are to be treated as ordinary income or capital gain. All of the facts have been stipulated.

Petitioner was a director and a principal executive officer of R. J. Funkhouser & Co., Inc., and was employed by it from the date on which it was organized in 1929 until October 31, 1958, when it ceased to exist by reason of its merger with the Funkhouser Co. as hereinafter more fully explained. He was also a director and a principal executive officer of the Funkhouser Co., and was employed by it from the date on which it was organized in 1927 until January 5, 1959. He held the positions of vice president and treasurer of both corporations until January 10, 1947, and thereafter held the position of president of both corporations, during which times he devoted his full time to their affairs.

The Funkhouser Co. was organized under the laws of the State of Maryland on October 6, 1927. Its business consisted primarily of producing rock granules which are used in the manufacture of asphalt roofing and for other purposes. R. J. Funkhouser & Co., Inc., was incorporated under the laws of the State of Maryland on January 2, 1929. Its business consisted principally of the sale of products manufactured by the Funkhouser Co. It succeeded to the business which had previously been conducted by the petitioner and R. J. Funkhouser as copartners trading as R. J. Funkhouser & Co.

On October 1, 1958, the outstanding stock of both corporations was owned or controlled, directly or indirectly, largely by petitioner and R. J. Funkhouser together with members of their respective families.

On October 3, 1958, the Funkhouser Co. and R. J. Funkhouser & Co., Inc., entered into an agreement with the Ruberoid Co. (hereinafter sometimes referred to as Ruberoid), a New Jersey corporation, providing for the acquisition by Ruberoid of all of the assets of the Funkhouser Co. and R. J. Funkhouser & Co., Inc., in exchange for shares of stock of Ruberoid, an assumption of liabilities, and a cash payment to be used to satisfy certain liabilities for taxes. Ruberoid was then engaged principally in the manufacture of building materials, such as asphalt roofing, gypsum, and asbestos products, and was one of the principal customers of R. J. Funkhouser & Co., Inc.

As a first step in carrying out the foregoing plan under the agreement of October 3, 1958, R. J. Funkhouser & Co., Inc., was merged into the Funkhouser Co. on October 31, 1958. Thereafter, on November

12, 1958, the Funkhouser Co. and Ruberoid entered into an amendment to the agreement of October 3, 1958, providing for the elimination of any cash payment by Ruberoid to the Funkhouser Co. and for the retention by the Funkhouser Co. of sufficient cash to pay its estimated tax liabilities. On December 24, 1958, the Commissioner of Internal Revenue, upon request, issued a ruling letter to the Funkhouser Co. and R. J. Funkhouser Co., Inc., to the effect that the merger of the two Funkhouser corporations and the proposed transfer of assets of the surviving corporation to Ruberoid constituted tax-free reorganizations.

The transfer of assets by the Funkhouser Co. to Ruberoid and the assumption of the liabilities of the Funkhouser Co. by Ruberoid in fact occurred on January 5, 1959. Thereafter, Ruberoid directly operated the business theretofore conducted by the Funkhouser Co.

Pursuant to the agreement of October 3, 1958, the Funkhouser Co. amended its certificate of incorporation on January 5, 1959, to change its name to "E. N. Funkhouser & Co., Inc." Also, in accordance with that agreement, Ruberoid, on or about February 15, 1959, issued 120,-098 shares of its capital stock to E. N. Funkhouser & Co., Inc., in exchange for the assets transferred to it; 198 shares were sold and the proceeds used to defray expenses. On March 9, 1959, the remaining 119,900 shares were distributed pro rata to the holders of the capital stock of E. N. Funkhouser & Co., Inc. Since that time E. N. Funkhouser & Co., Inc., has been dormant and has not conducted any business, although it has not been formally dissolved.

On December 20, 1946, R. J. Funkhouser & Co., Inc., and the Funkhouser Co. each entered into a separate pension trust agreement with Omer T. Kaylor as trustee under which each established a noncontributory pension plan and trust for the benefit of its full-time salaried employees. Each such pension trust agreement was amended from time to time, and as so amended satisfied the requirements of section 165(a) of the Internal Revenue Code of 1939 and section 401(a) of the Internal Revenue Code of 1954, at all times material hereto.

Benefits under such pension trust agreements were provided through income continuation policies acquired by the trustee from the Equitable Life Insurance Co. of Iowa. Benefits were payable to a participating employee or his beneficiary in the event of the employee's death, retirement, or other termination of employment with the "Corporation," as that term is defined in the respective pension trust agreements, or upon termination of the plan. Petitioner was an eligible employee under each such pension trust agreement and the trustee obtained from Equitable, policy No. A59352 for his benefit under the pension trust agreement of R. J. Funkhouser & Co., Inc., and policy No. A59351 for his benefit under the pension trust agreement of the Funkhouser

Co. Petitioner became 65 years of age in 1956; subsequent thereto, retirement benefits otherwise payable to him under the pension trust agreements were postponed in accordance with the terms of those agreements, and no contributions were thereafter made in behalf of the petitioner by either "Corporation."

Each of the pension trust agreements provided that in the event the "Corporation" should be dissolved or merged into or with another corporation which did not assume the obligation of the pension trust, the pension trust would automatically terminate. In connection with the merger of R. J. Funkhouser & Co., Inc., into the Funkhouser Co., these corporations entered into an agreement dated October 31, 1958, providing that upon the merger becoming effective, the obligations of R. J. Funkhouser & Co., Inc., under its pension trust agreement would be assumed by the Funkhouser Co. and such pension trust would be consolidated into and become a part of the pension trust of the Funkhouser Co. Omer T. Kaylor, as trustee under both such pension trust agreements, consented to such agreement dated October 31, 1958, and agreed to be bound by its provisions.

On December 19, 1958, the Funkhouser Co. and the trustee executed amendments to the pension trust agreement of the Funkhouser Co. The purpose of the amendments was to provide for the contemplated assumption by Ruberoid of the obligations of the Funkhouser Co. under such pension trust agreement upon the transfer to Ruberoid of all of the assets of the Funkhouser Co. The amendments were in part as follows:

— 3 —

The preamble to such Pension Trust Agreement (being the paragraph entitled "Parties to the Agreement") shall be amended by inserting in the first parenthetical phrase immediately following the word "Corporation" the following words "which term shall also be construed to mean and include in substitution for The Funkhouser Company any corporation which shall have purchased all or substantially all of the assets of The Funkhouser Company and which shall have become the employer of substantially all of its employees and which shall assume the obligation of this Pension Trust."

— 4 —

Paragraph NINETEENTH shall be amended by adding at the end thereof the following sentence:

"Notwithstanding anything to the contrary heretofore in the Paragraph NINETEENTH contained this Pension Trust shall not terminate and no distribution of its assets by the Trustee shall be made upon the dissolution, bankruptcy, insolvency or merger, as aforesaid, of The Funkhouser Company if prior to the occurrence of any of such events any other corporation shall have been substituted for The Funkhouser Company as the Corporation hereunder."

Prior to October 3, 1958, Ruberoid had in effect a qualified contributory pension plan, providing for retirement benefits for its employees. In connection with the acquisition of the assets of the Funkhouser Co. by Ruberoid, Ruberoid on or before January 5, 1959,

(a) amended such existing qualified pension plan so as to make provisions for the former employees of the Funkhouser Co. who became employed by it following the acquisition of such assets; (b) assumed the pension trust agreement of the Funkhouser Co., as amended to include the pension trust agreement of R. J. Funkhouser & Co., Inc., as well as the obligations thereunder and became the "Corporation" as that term was defined in said pension trust agreement as amended; and (c) placed all of the annuity contracts held by the trustee under the pension trust agreement of the Funkhouser Co. on a paid-up basis to be held for distribution to the employees upon termination of their employment.

On March 9, 1959, the administrative committee of the retirement plan for employees of Ruberoid issued a direction that any Ruberoid employee who was formerly an employee of the Funkhouser Co. and who, on December 31, 1958, was enrolled and participated in the Funkhouser Co. pension trust agreement and who had attained the age of 60½ years, but had not attained the age of 65 years, should be eligible to enroll as a contributing participant in the retirement plan of the employees of Ruberoid.

On August 26, 1959, the pension trust agreement originally made between the Funkhouser Co. and Omer T. Kaylor was further amended by agreement between Ruberoid and the trustee to provide for the handling of dividends and refunds on the annuity contracts held thereunder and for the distribution of such contracts upon any termination of employment.

On January 5, 1959, there were 174 employees of the Funkhouser Co. under the age of 65 for whose benefit annuity contracts were held under the Funkhouser Co. pension trust agreement, as amended to include the pension trust agreement of R. J. Funkhouser & Co., Inc. In addition, annuity contracts were also held for the benefit of the petitioner and R. J. Funkhouser, both of whom were then over 65 years of age. There were no other employees of the Funkhouser Co., including former employees of R. J. Funkhouser & Co., Inc., who had attained the age of 65 years on January 5, 1959. Since January 5, 1959, 104 of the foregoing 174 former employees of the Funkhouser Co. have retired or otherwise ceased to be employed by Ruberoid and have received a distribution of benefits under the Funkhouser Co. pension plan. The Funkhouser Co. pension trust agreement as assumed by Ruberoid is in effect and existence as of the present time. As of October 30, 1964, the trustee thereunder held annuity contracts for the benefit of the 70 former employees of the Funkhouser Co. who were still employed by Ruberoid.

Petitioner became employed by Ruberoid as a director and consultant as of the effective date of the acquisition by Ruberoid of the assets of the Funkhouser Co. (Jan. 1, 1959), and continued to be so

employed during the calendar years 1959, 1960, and 1961, receiving compensation from Ruberoid for his services at the rate of $15,000 per year. Subsequent to 1961, the petitioner has served Ruberoid only in the capacity of a director receiving only director's fees in connection therewith. Petitioner was not eligible to participate in the Ruberoid pension plan by reason of being over 65 years of age on January 1, 1959, and has never participated in the Ruberoid pension plan.

Subsequent to April 10, 1959, and prior to June 4, 1959, petitioner requested the trustee to surrender policy No. A59352 to Equitable for cash. On August 19, 1959, petitioner requested the trustee to surrender policy No. A59351 to Equitable for cash. Pursuant to such requests, the trustee surrendered these policies to Equitable for cash and on or about June 4, 1959, delivered a check in the amount of $16,854.30 to petitioner, representing the proceeds of policy No. A59352, and on or about October 15, 1959, delivered a check in the amount of $39,906.83 to petitioner, representing the proceeds of policy No. A59351.

The aggregate amount of $56,761.13 so received by petitioner was reported on his 1959 joint return as a long-term capital gain.

The parties have stipulated that the pension trust agreements of both Funkhouser corporations were qualified under section 165(a) of the Internal Revenue Code of 1939 and section 401(a) of the Internal Revenue Code of 1954, at all times material hereto, so that all pension trust distributions would be taxable at ordinary income rates under section 402(a)(1) of the 1954 Code, except as provided in section 402(a)(2) as follows: [1]

SEC. 402. TAXABILITY OF BENEFICIARY OF EMPLOYEES' TRUST.
   (a) TAXABILITY OF BENEFICIARY OF EXEMPT TRUST.—

\*        \*        \*        \*        \*        \*        \*

   (2) CAPITAL GAINS TREATMENT FOR CERTAIN DISTRIBUTIONS.—In the case of an employees' trust described in section 401(a), which is exempt from tax under section 501(a), if the total distributions payable with respect to any employee are paid to the distributee within 1 taxable year of the distributee on account of the employee's death or other separation from the service, \* \* \* the amount of such distribution, to the extent exceeding the amounts contributed by the employee \* \* \* shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months. \* \* \*

The question before us accordingly relates to the applicability of section 402(a)(2).

It is undisputed that the distributions herein constituted the "total distributions payable with respect to" petitioner and that they were paid to him "within 1 taxable year." However, the parties are in sharp disagreement as to whether the distributions were made "on account of" petitioner's "separation from the service" within the

---

[1] Cf. *Rybacki* v. *Conley*, 340 F. 2d 944 (C.A. 2).

meaning of the foregoing provisions. We hold that petitioner has failed to establish that the payments satisfied this requirement.

1. Pursuant to contractual provisions entered into on October 31, 1958, the obligations of R. J. Funkhouser & Co., Inc., under its pension trust were assumed by the Funkhouser Co., and the pension trusts of both corporations were consolidated. Thereafter, pursuant to contractual arrangements entered into on December 19, 1958, the term "Corporation" in the pension trust agreement was redefined to "mean and include in substitution for The Funkhouser Company any corporation which shall have purchased all or substantially all of the assets of The Funkhouser Company and which shall have become the employer of substantially all of its employees and which shall assume the obligation of this Pension Trust." In accordance with this new provision, Ruberoid, on or before January 5, 1959, assumed the Funkhouser Co.'s pension trust agreement and became the "Corporation" under that agreement.

There was therefore not only a continuity of the business enterprise, but by contractual arrangement, Ruberoid became the "Corporation" or employer in respect of the Funkhouser pension trust. Ruberoid was thus petitioner's employer in respect of that pension trust, and since he continued in its employ for at least some 2 years after the 1959 distributions in issue, these payments do not qualify as having been made on account of his "separation from the service" of his employer. *Rybacki* v. *Conley*, 340 F. 2d 944 (C.A. 2); *Edward Joseph Glinske*, 17 T.C. 562; *Clarence F. Buckley*, 29 T.C. 455. See also *Thomas E. Judkins*, 31 T.C. 1022, 1030.

To be sharply distinguished are such cases as *Lester B. Martin*, 26 T.C. 100, and *Mary Miller*, 22 T.C. 293, affirmed 226 F. 2d 618 (C.A. 6), relied upon by petitioner, where the acquiring corporation did not assume the obligations under the pension trust of the transferor corporation, and where the payments were held to qualify under section 402(a)(2) as having been made on account of the employee's separation from the service of the transferor corporation. In those cases, it was the transferor corporation alone that was the employer under the pension trust; here Ruberoid was substituted as the employer, and petitioner's distributions were not made in respect of "separation from the service" of Ruberoid.

2. Moreover, even if we were to consider petitioner's separation from the service of the Funkhouser Co. as relevant, we could not in any event decide this case in his favor. For, the statute requires that the distributions be made "on account of" such separation, and the record is utterly devoid of any evidence to establish that the distributions were made *by reason of*, or *because of*, or *as a result of*, or *as a consequence of*, or "on account of" such separation. The burden of proof was upon petitioner, cf. *Estate of Edward I. Rieben*, 32 T.C.

1205, 1208; *Welch* v. *Helvering*, 290 U.S. 111, 115, and the record shows merely that petitioner at sometime between April 10 and June 4, 1959, "requested" the trustee to surrender one of his policies for cash, and that he made a like request on August 19, 1959, in respect of the other policy. For aught that appears he might have made such requests even if the Funkhouser enterprise had not been transferred to Ruberoid. Had such been the situation, the distributions plainly would not have qualified under section 402(a)(2). Cf. *Estate of Frank B. Fry*, 19 T.C. 461, affirmed 205 F. 2d 517 (C.A. 3); *Harry K. Oliphint*, 24 T.C. 744, affirmed 234 F. 2d 699 (C.A. 5); *William S. Bolden*, 39 T.C. 829. There is nothing in the record to establish that these requests—and it may be noted that they were made at least several months apart—were in any way related to or "on account of" petitioner's separation from the service of the Funkhouser Co. Again, this case is to be distinguished from the *Martin* and *Miller* cases, where the complete termination of the pension plan as to all employees at about the time of the transfer of the business to a new corporation not assuming the pension trust obligations of the old was thought to result in distributions made "on account of" separation from the service of the old employer. And even in the latter situation the matter is by no means free from doubt. Cf. *United States* v. *Johnson*, 331 F. 2d 943 (C.A. 5); *United States* v. *Peebles*, 331 F. 2d 955 (C.A. 5); *United States* v. *Martin*, 337 F. 2d 171 (C.A. 8).

3. There is another aspect to this case that militates against petitioner's position. As already noted, when Ruberoid's acquisition of the Funkhouser business took effect on January 5, 1959, it became the "Corporation" within the terms of the pension trust agreement, which made provision for distributions only in the event of death, retirement, or other termination of employment with the "Corporation" or termination of the plan. Thus, petitioner was not entitled to receive any distributions in 1959 under the terms of the pension trust agreement while he was employed by Ruberoid and the plan remained in effect.

Although it appears that petitioner was not entitled to the distributions while still employed by Ruberoid, the trustee nevertheless complied with his requests, surrendered the two policies, and distributed the proceeds to him on or about June 4 and October 15, 1959.

The record in this case does not disclose the reason for the distributions. It appears only that petitioner requested the distributions and they were made to him. It may simply have been, as respondent suggests, that no one was disposed to complain if petitioner's share of the trust were distributed to him, although he apparently did not then have a right to it. The burden of proof was on petitioner to establish that the distributions were "on account of" his separation from the service of his employer, and, again, it has not been met.

*Decision will be entered under Rule 50.*