JACK E. SCHLEGEL AND NORAH SCHLEGEL, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1073-64. Filed August 31, 1966.

*Richard L. Rykoff*, for the petitioners.
*Morley H. White*, for the respondent.

TANNENWALD, *Judge:* Respondent determined a deficiency in petitioners' 1960 Federal income tax in the amount of $702.52. The sole issue is the proper tax treatment of a distribution to petitioner from a corporate profit-sharing plan.

### FINDINGS OF FACT

Some of the facts are stipulated and are found accordingly.

Petitioners reside at La Mirada, Calif. They filed a joint Federal income tax return for 1960 with the district director of internal revenue, Los Angeles, Calif. Norah Schlegel is a petitioner herein only by reason of having joined in the 1960 return. Any reference herein to petitioner shall mean Jack E. Schlegel.

In 1955, Annin Corp. (hereinafter referred to as Annin) established an employee profit-sharing and retirement plan (hereinafter referred to as "the plan") and an accompanying trust. The plan contained the following provisions:

*Section 9.2. Continuance of Plan by Successor Business*

In the event of the dissolution, consolidation or merger of the Company, or the sale by the Company of its assets, the resulting successor person * * * may continue this Plan * * *. If, within ninety days from the effective date [thereof] such successor does not adopt this Plan, * * * this Plan shall automatically be terminated * * *.

The plan in section 1.4 defined "Company" as "THE ANNIN CORP. * * * or any successor in interest to it * * * which may expressly agree in writing to continue this Plan."

During the years in question, the plan and the trust through which it was implemented met the requirements of sections 401(a) and 501 (a), respectively, I.R.C. 1954.

On or about January 30, 1959, Worthington Corp. (hereinafter referred to as Worthington) purchased all of the outstanding Annin shares. Worthington and its stockholders were in no way related to Annin or its stockholders.

On May 29, 1959, Worthington acquired all of the assets and assumed all of the liabilities of Annin. Two days later [1] Annin was liquidated into Worthington and thereafter was continued as a division of Worthington with no substantial change in management or operating procedure.

On June 17, 1959, Worthington, pursuant to section 9.2, adopted the plan and authorized its president to take such action as would be necessary or desirable in connection therewith. On July 1, Worthington notified the trustee under the plan of its action. Worthington made the required contribution under the plan in 1959.

On August 25, 1959, Worthington requested a favorable ruling from respondent in connection with its adoption of the plan, and respondent approved the action on November 25 of that year.

Prior to May 1959, Worthington considered various ways of handling the plan, including procedures for integrating it and the accumulated trust fund into Worthington's pension plan. Worthington felt that integration, with the concomitant inability of Annin's employees to obtain distributions from the plan, would encourage such employees to remain in Worthington's employ. On May 11, 1959, an analysis was submitted to Worthington by Marsh & McLennan, consultants, on how integration might be accomplished. By December 1959 Worthington concluded that integration was not feasible [2] and on December 16 determined to discontinue the plan as of December 31. On January 20, 1960, Worthington terminated the plan as of December 31, 1959.

Between December 16, 1959, and January 20, 1960, Worthington made several amendments to the plan. Another, and last, amendment was adopted by Worthington on February 17, 1960.

Petitioner was an employee of Annin immediately prior to the acquisition by Worthington of the Annin shares and continued to be such an employee until the liquidation of Annin. He was transferred

---

[1] The stipulation so reads but it would appear, at least for tax purposes, that the liquidation occurred on May 29, 1959 (a Friday), and that May 31, 1959 (a Sunday), merely formalized the transaction as of the last day of the month. In any event, the discrepancy does not affect the issue involved herein.

[2] There were three major obstacles to integration. Contributions to the plan were based on profits, while Worthington's plan provided for fixed contributions regardless of profits, i.e., a pension rather than a profit-sharing plan. It was also determined that Worthington could not provide within the framework of the Worthington plan, past service credits to which Annin employees would be entitled if the two plans were combined without resulting inequities to other members of the Worthington plan who were similarly situated from the points of view of compensation and past services. Finally, Worthington had a corporate policy of not disclosing the profitability of its divisions, yet the nature of the plan would have required such disclosure.

to the Annin Division of Worthington after the acquisition of Annin's assets and liabilities in May 1959. His position and duties as an employee of Annin and of the Annin Division of Worthington were the same. Petitioner terminated his employment in November 1962.

On March 25, 1960, petitioner received a payment of $5,614.37 from the plan. Such payment constituted the total distributions payable to petitioner under the plan. In his Federal income tax return for that year he treated the payment as long-term capital gain. Respondent determined that the payment represented ordinary income.

OPINION

The parties have locked horns on the sole issue involved herein, i.e., whether the distribution to petitioner from the Plan was paid "on account of the employee's * * * separation from the service" within the meaning of section 402(a)(2) of the Code.[3] We hold for respondent.

Despite the bramblebush character of the decided cases and rulings on what constitutes a distribution paid "on account of * * * separation from the service,"[4] it is possible to distill certain reasonably well-defined benchmarks which control our decision herein.

Obviously, there must be "a separation from the service." A transfer of the entire beneficial ownership of a business in and of itself is insufficient if the old employer continues as a separate entity and the employee continues in its service. *United States* v. *Martin*, 337 F. 2d 171 (C.A. 8, 1964); *United States* v. *Johnson*, 331 F. 2d 943 (C.A. 5, 1964), fn. 4; *Nelson* v. *United States*, 222 F. Supp. 712 (D. Idaho 1963); *McGowan* v. *United States*, 175 F. Supp. 364 (E.D. Wisc. 1959), affd. 277 F. 2d 613 (C.A. 7, 1960); *William S. Bolden*, 39 T.C. 829 (1963); *Estate of Edward I. Rieben*, 32 T.C. 1205 (1959); *Clarence F. Buckley*, 29 T.C. 455 (1957). Where, however, there is a change of employer accompanied by such a transfer of beneficial ownership,[5] the requirement is met, at least where the acquiring new employer does not adopt the plan or where action to terminate the plan is taken prior to completion of the acquisition. *Lester B. Martin*, 26 T.C. 100 (1956); *Mary Miller*, 22 T.C. 293 (1954), affirmed per curiam 226 F. 2d 618 (C.A. 6, 1955). In such situations, the taxpayer's employer is the acquired corporation, his separation is from the service of that employer, and the payment is made to him on account of that separation and not on account of termination of the plan.

---

[3] All references are to the Internal Revenue Code of 1954.

[4] An excellent analysis in depth is contained in Judge Wilson's majority opinion in *United States* v. *Johnson*, 331 F. 2d 943 (C.A. 5, 1964).

[5] We need not consider the problem where there is a change of employer accompanied by a transfer of the business not involving a substantial alteration of beneficial ownership. See Rev. Rul. 58–95, 1958–1 C.B. 197, 199; S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 54, 289 (1954).

The situation becomes more complicated when the taxpayer becomes an employee of the acquiring corporation and the new employer adopts and continues the plan. In such cases, separation from the service of the acquiring corporation has been held to be a prerequisite to capital gains treatment, with the result that distributions upon subsequent termination of the plan unaccompanied by severance of such employment have been considered made on account of termination of the plan and not on account of separation from the service. *Rybacki* v. *Conley*, 340 F. 2d 944 (C.A. 2, 1965) ; *E. N. Funkhouser*, 44 T.C. 178 (1965), on appeal (C.A. 4, Sept. 27, 1965) ; see *Edward Joseph Glinske, Jr.*, 17 T.C. 562, 565 (1951).

In the instant case, there is no question that a new owner (Worthington), unrelated to the former owner (Annin), entered the picture and that at the end of May 1959 there was a change in petitioner's employment from Annin to Worthington. Clearly there was a "separation from the service" of Annin. The difficulty arises from the fact that Worthington thereafter expressly adopted the plan and became "the Company" under section 1.4. It subsequently took various actions with respect to the plan, including notification to the trustee, appointment of a committee, adoption of several amendments, and the making of the required contribution in 1959. It did not reach a decision as to how to handle the plan until December 16, 1959, and the termination was not finalized until January 20, 1960. As a result, since petitioner was an employee of Worthington and that employment continued after the distribution herein, there was no "separation from the service" as required by section 402(a)(2).

Petitioner seeks to avoid the impact of *Rybacki* v. *Conley*, *supra*, and *E. N. Funkhouser*, *supra*, by asserting that Worthington had decided at or prior to the acquisition of Annin to discontinue the plan, that its adoption was merely a formality designed to give it a short breathing spell until it could consummate the mechanics of discontinuance, and that it actually accomplished its objective within a matter of months.[6] He therefore concludes that there was in reality no adoption of the plan by Worthington and that, since Annin was the only corporation which realistically operated the plan, the distribution should be considered as having been made on account of petitioner's "separation from the service" of Annin on the authority of *Lester B. Martin*, *supra*, and *Mary Miller*, *supra*.

Assuming, without deciding, that the short timelag furnishes a valid basis for distinguishing *Rybacki* and *Funkhouser* and that prior to the acquisition Worthington did in fact form an intention to terminate the plan (as to which the record is not clear), there is still a significant gap in petitioner's argument. Even though Worthington

---

[6] In *Funkhouser* the plan was still in existence at the time of trial (a fact which petitioner herein emphasizes) and in *Rybacki* the plan was continued for a full 2 years.

may have intended to terminate the plan in May 1959, it is clear that it did not then reach any conclusion as to whether distributions should be made from the plan. Indeed, the main objective of Worthington at the time of acquisition, and for some months thereafter, was to find a way to integrate the funds accumulated under the plan into its existing pension program. By adopting the plan, it precluded petitioner and his fellow Annin employees from obtaining distributions at the time of their transfer of employment from Annin to Worthington and thereby preserved its option.[7]

The key to *Martin* and *Miller* lies in the fact that in both cases the taxpayer's right to the distribution from the plan became fixed at the time of the severance of employment by the acquired corporation. The actual distribution—albeit temporarily delayed until completion of the formalities attendant upon termination—was in implementation of that right. See *Lester B. Martin, supra* at 106; *Mary Miller, supra* at 301. The same situation obtained in *Thomas E. Judkins*, 31 T.C. 1022 (1959), where on June 1 the taxpayer ceased to be employed by either the acquired or acquiring corporation and, although the decision to terminate the plan was taken prior thereto on May 5, the termination was not finalized until a subsequent date, namely, July 26.

We cannot practice petitioner's alchemy and, by a process of relation back, somehow create rights which never existed in order to make this case fit the pattern of *Martin* and *Miller*.

We recognize that petitioner in a sense is a victim of decisions over which he had no control—it is possible that a more careful handling of the situation could have produced the desired capital gain.[8] But, under the circumstances herein, we must conclude that the distribution to petitioner was made on account of the termination of the plan[9] and not on account of his separation from the employment of Annin.[10]

*Decision will be entered for the respondent.*

---

[7] If Worthington had not adopted the plan and had timed the liquidation of Annin and the transfer of petitioner's employment to coincide with the termination of the plan, we would have been faced with a different and perhaps more difficult question. See *Estate of Edward I. Rieben*, 32 T.C. 1205, 1208 (1959).

[8] See fn. 7, *supra*.

[9] Under sec. 7.3(d) of the plan, distribution upon termination of employment other than by reason of death, total disability, or retirement was to be made in five annual installments or, *in the discretion of the committee*, in a lump sum. Under the Jan. 20, 1960, amendment adopted by Worthington, the termination distributions were to be paid in one lump sum or five annual installments at, *the option of each participant*. The record is silent as to whether the distribution herein was requested by petitioner or directed to be made by the committee. Cf. *E. N. Funkhouser*, 44 T.C. 178, 185 (1965), on appeal (C.A. 4, Sept. 27, 1965).

[10] At the time of the enactment of the 1954 Code, Congress expressly rejected capital gains treatment for distributions on account of certain types of plan terminations except in a limited class of cases. Sec. 402(e); H. Rept. No. 1337, 83d Cong., 2d Sess., p. A146 (1954); S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 54, 289 (1954).