Robert L. Tedeschi and Barbara C. Tedeschi v. Commissioner.
Tedeschi v. Commissioner
Docket No. 3484-64.
United States Tax Court
T.C. Memo 1966-232; 1966 Tax Ct. Memo LEXIS 49; 25 T.C.M. (CCH) 1205; T.C.M. (RIA) 66232; October 21, 1966
Joseph F. Flynn, for the petitioners. Robert B. Dugan, for the respondent. FAY
Memorandum Opinion FAY, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the calendar year 1961 in the amount of $1,684.90. The sole issue presented for decision is whether petitioners realized ordinary income or capital gain upon receipt of their interest in Tedeschi's Salaried Employee Deferred Profit Sharing Trust in the taxable year 1961. All of the facts have *50 been stipulated and the stipulated facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners Robert L. Tedeschi (hereinafter sometimes referred to as petitioner) and Barbara C. Tedeschi filed a Federal joint income tax return for the calendar year 1961 with the district director of internal revenue, Boston, Massachusetts. Petitioner was an employee of Tedeschi's Super Markets, Inc. (hereinafter referred to as Super Markets), throughout the taxable year 1961. Petitioner was also a beneficiary of the Tedeschi's Salaried Employee Deferred Profit Sharing Trust (hereinafter sometimes referred to as Profit Sharing Trust), which trust was executed on December 13, 1958. Profit Sharing Trust was determined to meet the requirements of section 401 of the Internal Revenue Code of 1954 and thus qualified for exemption under section 501 of the 1954 Code. On April 10, 1961, Stop & Shop, Inc., (hereinafter referred to as Stop & Shop) a Massachusetts corporation, acquired 100 percent of the outstanding stock of Super Markets' stock from Ralph D. Tedeschi, its sole shareholder, in exchange for the stock of Stop & Shop, pursuant *51 to a stock exchange agreement. Since that date Super Markets has been operated as a subsidiary of Stop & Shop. Pursuant to the stock exchange agreement between Ralph D. Tedeschi and Stop & Shop, all corporate books and records of Super Markets were delivered to Stop & Shop on April 10, 1961. On the same date, a special meeting of the directors of Super Markets was held and the following changes in Super Markets' directors and officers were made: Prior to
After
April 10, 1961
April 10, 1961
President
Ralph D. Tedeschi
Ralph D. Tedeschi
Vice presidents
Dominic R. Tedeschi
Irving W. Rabb
Robert L. Tedeschi
Dominic R. Tedeschi
William A. Tedeschi
Robert L. Tedeschi
Charles A. Fitzgibbons
William A. Tedeschi
Charles A. Fitzgibbons
Treasurer
Ralph D. Tedeschi
Sidney R. Rabb
Asst. treasurer
Lloyd D. Tarlin
Clerk
Lester E. Callahan
Arthur L. Sherin
Directors
Ralph D. Tedeschi
Ralph D. Tedeschi
Dominic R. Tedeschi
Dominic L. Tedeschi
Robert L. Tedeschi
Robert L. Tedeschi
William A. Tedeschi
William A. Tedeschi
Charles A. Fitzgibbons
Charles A. Fitzgibbons
Irving W. Rabb
Lester E. Callahan
Sidney R. Rabb
Norman S. Rabb
Albert S. Frager
Arthur L. Shein
Lloyd D. Tarlin
*52 After April 10, 1961, petitioner's salary and other compensation were paid under the direction and control of Stop & Shop's management. However, a W-2 statement for the year 1961 was issued in the name of Super Markets. On July 20, 1961, a special meeting of Super Markets' board of directors voted to terminate Profit Sharing Trust as of April 9, 1961. As a result of Profit Sharing Trust's termination and pursuant to clause XIII thereof, [1] the entire accumulated interest of Profit Sharing Trust's participants was distributed on August 10, 1961. Petitioner's share of said distribution was $8,786.49. Petitioner remained an employee of Super Markets until July 1963. Petitioners reported in their Federal joint income tax return for the calendar year 1961 the sum of $8,786.49 received from Profit Sharing Trust in the same year as long-term capital gain. In his notice of deficiency, respondent determined that the aforesaid amount was properly taxable as ordinary *53 income and not long-term capital gain as reported by petitioners. On April 10, 1961, Stop & Shop acquired 100 percent of the stock of Super Markets. Subsequently, on July 20, 1961, the board of directors of Super Markets voted to terminate its profit-sharing plan and trust as of April 9, 1961. In August 1961 the aforesaid plan and trust were terminated and petitioner received a lump-sum distribution of his entire interest in the trust. Petitioner remained an employee of Super Markets until July 1963. The issue for decision is whether a 100 percent change in the stock ownership of Super Markets resulted in petitioner's separation from the service of his corporate employer within the meaning of section 402(a)(2) of the Internal Revenue Code of 1954. In the case of an employees' trust described in section 401(a), which is exempt from tax under section 501(a), if the total distributions payable with respect to any employee are paid to the distributee within 1 taxable year of the distributee on account of the employee's death or other separation from the service, or on account of the death of the employee after his separation from the service, the amount of *54 such distribution * * * shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months. * * * Respondent contends that since (1) Super Markets continued to operate as a separate corporate entity after the acquisition of all its outstanding stock by Stop & Shop and (2) petitioner continued to be employed by Super Markets in the same capacity as prior to the stock acquisition, the lump-sum distribution to petitioner was therefore made because of the termination of the profitsharing plan and trust and not because petitioner was separated from the service of his employer. Petitioner takes the position that the practical effect of acquisition by Stop & Shop of all Super Markets' outstanding stock constituted a termination of his employer-employee relationship with Super Markets as it existed prior to April 10, 1961, and was therefore a "separation from the service" within the meaning of section 402(a)(2). Long-term capital gain treatment is applicable to a lump-sum distribution from an exempt employee's trust only if the distribution is on account of the employee's separation from the service of his employer, through death or otherwise, or death *55 after separation. Nowhere defined or explained in either the Code, Regulations, or the Committee Reports, the judiciary largely has been burdened with the task of determining the proper range of applicability for the phrase "separation from the service." It has often been held that a "separation from the service" as intended by section 402(a)(2) does not occur upon the mere transfer of complete stock ownership when (1) the old corporate employer continues as a separate entity and (2) the employee continues in its service. See United States v. Johnson, 331 F. 2d 943 (C.A. 5, 1964); United States v. Martin, 337 F. 2d 171 (C.A. 8, 1964); Nelson v. United States, 222 F. Supp. 712 (N.D. Idaho 1963); and Robert E. Beaulieu, T.C. Memo. 1965-303, wherein capital gains treatment under section 402(a)(2) was denied to employee-distributees upon the receipt of lump-sum distributions under factual situations which were substantially similar to those presented herein. The cases [2] relied upon by petitioner are inapposite. In both Mary Miller, 22 T.C. 293 (1954), affd. per curiam 226 F. 2d 618 (C.A. 6, 1955); and Lester B. Martin, 26 T.C. 100 (1956), *56 this Court found that the corporate distributors had liquidated and transferred their assets to successor corporations before the retirement plans involved therein were terminated and distributions therefrom were made. At the time of the distributions, petitioner-employees were employed by the successor corporations. In Thomas E. Judkins, 31 T.C. 1022 (1959), the employee-distributee had actually severed his employment prior to the lump-sum distribution in issue. We see no statutory warrant to explore the metaphysics of corporate identity vis-a-vis the corporate employee as petitioner urges us to do. After the stock acquisition, Super Markets did not disappear but, instead, continued in the same business, "clothed in its original corporate cloak." And petitioner remained an employee of Super Markets in the same capacity as before the stock acquisition. The distribution to petitioner was made to him because Super Markets - the same company under new management *57 - chose to terminate its profit-sharing plan. Although the stock acquisition triggered the termination of Super Markets profit-sharing plan, we do not believe that it severed the employer-employee (Super Markets-petitioner) relationship in such a manner as to constitute a "separation from the service." See United States v. Johnson, supra. Moreover, we are inclined to agree with the opinion of the Fifth Circuit in United States v. Johnson, supra at pp. 947-951, to the effect that Congress did not intend to grant capital gains treatment under section 402(a)(2) to lumpsum distributions made upon the termination of pension or profit-sharing plans resulting from a mere change in the ownership of corporate stock. On the basis of the foregoing, we hold for respondent. Decision will be entered for the respondent. Footnotes
1. Article XIII of Profit Sharing Trust provides that upon its termination the participating employees shall be entitled to receive any payments standing to their credit as of the date of the termination of the plan.↩
2. Mary Miller, 22 T.C. 293 (1954), affd. per curiam 226 F. 2d 618 (C.A. 6, 1955); Lester B. Martin, 26 T.C. 100 (1956); Thomas E. Judkins, 31 T.C. 1022↩ (1959).