MARIE CLARKE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

CHARLES A. KUHNMUENCH AND LEONORE KUHNMUENCH, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 342-69, 486-69.   Filed August 31, 1970.

*Allan J. Smietanka* and *Joseph G. Smietanka,* for the petitioners. *Robert H. Burgess,* for the respondent.

OPINION

QUEALY, *Judge:* The respondent determined deficiencies in the income tax of Miss Marie Clarke (docket No. 342–69) and Mr. and Mrs. Charles A. Kuhnmuench (docket No. 486–69) as follows:

| Docket No. | TYE | Deficiency |
|---|---|---|
| 342–69 | Dec. 31, 1964 | $ 884. 01 |
| 486–69 | Dec. 31, 1964 | $4, 235. 48 |

The only issue is whether distributions from a qualified profit-sharing plan to Miss Marie Clarke and Mr. Charles A. Kuhnmuench in the amounts of $7,261.32 and $21,202.20, respectively, were made on account of their "separation from service" within the meaning of section 402(a) (2).[1]

All of the facts have been stipulated. The stipulation of facts and exhibits are so found.

Miss Marie Clarke resided in Chicago, Ill., at the time she filed her petition in this case. She filed her income tax return for the calendar year 1964 with the district director of internal revenue, Chicago, Ill.

Mr. Charles A. Kuhnmuench and his wife, Leonore, resided in Park Ridge, Ill., at the time they filed their petition in this case. They filed their joint income tax return for the calendar year 1964 with the district director of internal revenue, Chicago, Ill.

Trent Tube Co. was incorporated under the laws of the State of Wisconsin in 1941. Crucible Steel Co. of America acquired all of the stock of the Trent Tube Co. on September 23, 1948. Crucible Steel Co. then operated Trent Tube Co. as a wholly owned subsidiary until March 31, 1963. On that date Trent Tube Co. was merged into the Crucible Steel Co. and was thereafter operated as the Trent Tube division of the Crucible Steel Co.

Miss Marie Clarke was continuously employed as a nonunion, salaried employee from 1950 to the date of the trial herein by Trent Tube Co. or the Trent Tube division of Crucible Steel Co.

Mr. Charles A. Kuhnmuench was continuously employed as a nonunion, salaried employee from 1948 to the date of the trial herein by Trent Tube Co. or Trent Tube division of the Crucible Steel Co.

Trent Tube Co. adopted a profit-sharing plan on September 27, 1944, which was incorporated in the Trent Tube Co. Profit-Sharing Trust. The trust satisfies the requirements of section 401(a) and is exempt from tax under section 501(a).

As of January 1, 1963, the profit-sharing trust provided that no distributions could be made to an employee or his or her beneficiaries until

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

the employee's death, retirement, resignation, or discharge from the service of Trent Tube Co.

The trust provided further that no contributions were to be made to the trust, nor was liability to make contributions to exist, except upon the authorization of the board of directors of the Trent Tube Co. The trust reserved to Trent Tube Co. the right to terminate contributions to the trust without terminating the trust itself. On termination of contributions, the interests of the participating employees were to become fully vested.

On February 28, 1963, in anticipation of its merger into its parent corporation, the board of directors of Trent Tube Co. adopted a resolution exercising its right to terminate all further contributions to the profit-sharing trust. The resolution also stated:

> That the Trustees of the Company's Restated Employees' Profit-Sharing Trust shall hold the assets of the Trust Fund and any net income thereon for the benefit of and eventual distribution to the Participants eligible therefor and entitled thereto under the terms of said Restated Employees' Profit-Sharing Trust or their beneficiaries, which eventual distribution shall be made at the time or times when such Participants and/or their beneficiaries would have been entitled to receive such payment if no resolution terminating contributions to the Trust Fund had been adopted, except that effective immediately upon expiration of thirty (30) days following receipt of said written notice by the Trustees, the interests of all such eligible Participants shall be fully vested and no longer subject to forfeiture for any reason whatsoever. * * *

On March 31, 1963, Trent Tube Co. was merged into Crucible Steel Co. and was thereafter operated as the Trent Tube division. Crucible Steel Co. did not make any contributions to the Trent Tube Co. Profit-Sharing Trust.

Crucible Steel Co. had adopted a qualified retirement plan for salaried, nonunion employees in 1948 which was also incorporated in a trust. This trust allowed the employees of the Trent Tube division to participate in the Crucible Steel Co.'s retirement plan. Participation was provided for by an amendment to the trust effective January 1, 1963. However, employees of the Trent Tube division received no credit for service prior to 1963.

On August 28, 1963, the board of directors of Crucible Steel Co. took action to amend the Trent Tube Co. Profit-Sharing Trust. Authority for this action was provided by the provisions in the trust that the "Trust may be amended by written amendment approved by resolution of the Board of Directors of the Company" and that the term " 'Company' means Trent Tube Company, its corporate successor, and all corporations which assume its obligations hereunder." The amendment added section XIII–A to the profit-sharing trust. That section provided, as follows:

Every Participant shall individually and independently have the right to withdraw the full amount of his equity in the Trust Fund by irrevocably exercising said right of withdrawal in writing within a single and specific period of time, not to exceed thirty (30) days, to be allotted for the exercise thereof (hereinafter called "single election period"), which right of withdrawal if not so exercised shall automatically expire and be extinguished immediately upon expiration of said single election period; it being understood that the Settlement Date with respect to any Participant so electing to withdraw his equity shall be on a date not less than thirty-one (31) days subsequent to the date upon which said single election period expires; and it being further understood that the determination of the value of the Participant's equity and the manner and time for paying such equity to the Participant shall be governed as otherwise provided in this Trust, except that any payment made to a Participant pursuant to this Section XIII-A shall be made in a single lump sum payment; and provided further that all right, title and interest in the Trust and Trust Fund of any such withdrawing Participant shall cease and determine as of the Settlement Date applicable to any such Participant, subject only to the payment to any such Participant of the full amount of his equity in the Trust Fund.

Under the terms of the trust, those participants who declined to withdraw their vested interests pursuant to section XIII-A, or their beneficiaries, may receive distributions from the trust only on the participants' death, retirement, resignation, or discharge from the service of the Crucible Steel Co., the corporate successor of the liquidated Trent Tube Co.

Miss Marie Clarke, a participant in the Trent Tube Co. Profit-Sharing Trust, timely elected in January 1964 in accordance with the provisions of section XIII-A of said trust to withdraw her entire vested interest ($7,261.32) in the trust which amount was then paid to her in 1964.

Mr. Charles A. Kuhnmuench, also a participant in the trust, timely elected in January 1964 in accordance with the provisions of section XIII-A of said trust to withdraw his entire vested interest ($21,202.20) in the trust which amount was then paid to him in 1964.

We are called upon to decide whether distributions received by the petitioners from the Trent Tube Co. Profit-Sharing Trust, pursuant to an election under section XIII-A, were made "on account of the employee's * * * separation from the service" within the meaning of section 402(a)(2). That section provides, in part, as follows:

(2) CAPITAL GAINS TREATMENT FOR CERTAIN DISTRIBUTIONS.—In the case of an employees' trust described in section 401(a), which is exempt from tax under section 501(a), if the total distributions payable with respect to any employee are paid to the distributee within 1 taxable year of the distributee on account of the employee's death or other separation from the service, * * *, the amount of such distribution, * * * shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months. * * *

In order for a lump-sum distribution to qualify for capital gains treatment under section 402(a), there must be *both* a "separation from

the service" within the meaning of the statute *and* the distribution must have been made "on account of" that separation. *Jack E. Schlegel*, 46 T.C. 706 (1966). In the case before us, neither condition is present.

First, there was no "separation from the service," i.e., the employment of the petitioners by Trent Tube Co. Both petitioners continued their employment with the surviving corporation after the merger. As distinguished from a sale or exchange of assets for stock, the corporate identity of Trent Tube Co. became merged into Crucible Steel Co. pursuant to Wisconsin statute. Section 180.67, Wis. Stat. Ann. (1957), provides, in part, as follows:

180.67 Effect of merger or consolidation

When such merger or consolidation has been effected:

(1) The several corporations parties to the plan of merger or consolidation shall be a single corporation, which, in the case of a merger, shall be that corporation designated in the plan of merger as the surviving corporation, and, in the case of a consolidation, shall be the new corporation provided for in the plan of consolidation.

(2) The separate existence of all corporations parties to the plan of merger or consolidation, except the surviving or new corporation, shall cease.

(3) Such surviving or new corporation shall have all the rights, privileges, immunities and powers and shall be subject to all the duties and liabilities of a corporation organized under this chapter.

(4) Such surviving or new corporation shall thereupon and thereafter possess all the rights, privileges, immunities, and franchises, as well of a public as of a private nature, of each of the merging or consolidating corporations; and all property, real, personal and mixed, and all debts due on whatever account, including subscriptions to shares, and all other choses in action, and all and every other interest, of or belonging to or due to each of the corporations so merged or consolidated, shall be taken and deemed to be transferred to and vested in such single corporation without further act or deed; and the title to any real estate, or any interest therein, vested in any of such corporations shall not revert or be in any way impaired by reason of such merger or consolidation.

Thus, while this Court noted "the bramblebush character of the decided cases and rulings" on this issue in the *Schlegel* case, it is unnecessary to retread that path. We are not faced with the problem of determining whether there is the lack of a sufficient continuity of interest where the business in which the taxpayer was employed has been transferred by the corporate employer. Compare *Victor S. Gittens*, 49 T.C. 419 (1968); *Mary Miller*, 22 T.C. 293 (1954), affirmed per curiam 226 F. 2d 618 (C.A. 6, 1955); *Lester B. Martin*, 26 T.C. 100 (1956). In this case, the corporate employer was merged into and continued as a part of the surviving corporation.[2] In our opinion, a statutory merger under Wisconsin law without any other change in employment does not result in a "separation from the service."

---

[2] It should be noted that under Wisconsin law it was only the "separate" existence of the merged corporation that ceased to exist. Wis. Stat. Ann. (sec. 180.67(2) (1957)

Regardless of the legal incidents of a statutory merger, however, the principles enunciated by the court in *United States* v. *Haggart*, 410 F. 2d 449 (C.A. 8, 1969), are particularly applicable to this case. In the *Haggart* case, the court said:

The Tax Court suggested in *Gittens* that capital gains treatment should, despite the broad language of § 402(e), be accorded to distributions spawned by reorganizations involving substantial changes in the make-up of employees and more than technical changes in their employment relationship. A concurring minority in the same opinion would extend preferential treatment to those distributions fostered by reorganizations accompanied by meaningful changes in the beneficial ownership of the business.

It is unnecessary for us to decide whether §§ 402(a)(2) and 402(e) should be so extended. Here, there was no substantial change in the make-up of employees, there was only a technical change in the employment relationship, and there was no meaningful change in the beneficial ownership of the business.

Secondly, due to the circumstances, including the lapse of time, it cannot be said that the distribution was made as a result of any separation from the service on the part of the petitioners. The requisite amendment to the plan pursuant to which the petitioners elected a lump-sum distribution was not adopted until 5 months after the occurrence of the event which petitioners rely upon as constituting a separation from the service within the meaning of section 402(a). At the time of the merger, the petitioners did not acquire any right to a lump-sum distribution. *Jack E. Schlegel, supra.* In fact, it would appear that the right was granted more as an afterthought than as a result of any change in the nature of the petitioners' employment.

Reviewed by the Court.

*Decisions will be entered for the respondent.*

---

TANNENWALD, J., concurring: I agree with the result. Compare *Jack E. Schlegel*, 46 T.C. 706 (1966), and my concurring opinion in *Victor S. Gittens*, 49 T.C. 419, 426–430 (1968).