340 F.2d 944
 65-1 USTC P 9168
 C. Walter RYBACKI, Plaintiff-Appellant,
v.
Joseph J. CONLEY, District Director of Internal Revenue,
Defendant-Appellee.
Charles J. NOONAN et ux., Plaintiffs-Appellants,
v.
Joseph J. CONLEY, District Director of Internal Revenue,
Defendant-Appellee.
Walter C. KALOY et ux., Plaintiffs-Appellants,
v.
Joseph J. CONLEY, District Director of Internal Revenue,
Defendant-Appellee.
 Nos. 192-194, Dockets 28809-28811.
 United States Court of Appeals Second Circuit.
 Argued Dec. 10, 1964.
Decided Jan. 12, 1965.
 
 Robert I. Berdon, David D. Berdon, Pasquale Young, New Haven, Conn. (Berdon & Berdon, New Haven, Conn., of counsel), for plaintiffs-appellants.
 Louis F. Oberdorfer, Asst. Atty. Gen., David O. Walter, Lee A. Jackson, Ralph A. Muoio, Attorneys, Dept. of Justice (F. Owen Eagan, U.S. Atty., for Dist. of Connecticut, of counsel), for defendant-appellee.
 Before WATERMAN, MOORE and KAUFMAN, Circuit Judges.
 WATERMAN, Circuit Judge:
 
 
 1
 Taxpayers brought separate suits in the United States District Court for the District of Connecticut to recover a portion of the federal income taxes levied against them for the calendar year 1958. They claimed, pursuant to Section 402(a)(2) of the Internal Revenue Code, 26 U.S.C. 402(a)(2), that the benefits of an employees' trust distributed to them in that year should have been taxed as long-term capital gains rather than as ordinary income. At the close of a trial of the consolidated cases, Judge Blumenfeld instructed the jury to return a verdict in favor of the government, and taxpayers have appealed.
 
 
 2
 The relevant facts are undisputed. On January 4, 1954, the National Folding Box Company of New York (hereinafter National) acquired the assets and obligations of another corporations, including an employees' profit-sharing and benefit plan initiated ten years earlier. This plan provided that the company would make annual contributions to a trust fund, to be used mainly to furnish pensions and death benefits for its employees. In the event of a merger, the plan provided that the successor corporation could either adopt the plan as its own or, by inaction, allow it to lapse after ninety days.
 
 
 3
 On December 30, 1955, National merged into its parent corporation Federal Paper Board Company (hereinafter Federal). The board of directors of Federal had already expressly adopted the profit-sharing and benefit plan, effective the day of the merger. The plan continued in operation until December 6, 1957, when the board of Federal resolved to end the company's contributions to the trust fund, effective January 1, 1958. At that time Federal gave each employee the choice of withdrawing his interest in the fund in one lump sum or of transferring his interest to a new pension plan.
 
 
 4
 Plaintiffs-appellants were employees of National in 1954 and 1955 and continued in the employ of Federal at least through 1958. In the latter year, plaintiffs-appellants and numerous other employees each elected to withdraw his interest in the trust fund in one lump sum. Plaintiffs-appellants reported their proceeds as ordinary income and filed for partial refunds on the ground that the proceeds were long-term capital gains. The refunds were refused, and they brought the suits which are the subject of this appeal. The other similarly situated employees have agreed with the Internal Revenue Service to be bound by the outcome of this litigation.
 
 
 5
 The parties agree that the profit-sharing and benefit plan meets the requirements of Section 401 of the Internal Revenue Code. Therefore, pursuant to Section 402(a)(1), distributions from the trust fund are taxable to the recipients as ordinary income in the year of distribution, unless Section 402(a)(2) applies:
 
 
 6
 'If the total distributions payable with respect to any employee are paid to the distributee within 1 taxable year of the distributee on account of the employee's death or other separation from the service, * * * the amount of such distribution, to the extent exceeding the amounts contributed by the employee * * *, shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months.' 26 U.S.C. 402(a)(2).
 
 
 7
 The district court ruled that the distribution to taxpayers was not 'on account of (their) death or other separation from the service.' The legislative background and subsequent interpretation of this clause have been set forth in scholarly fashion in United States v. Johnson, 331 F.2d 943 (5 Cir. 1964) and need not be repeated here. The government acknowledges that if the distribution to taxpayers was attributable to their separation from the service of National in 1955, taxpayers are entitled to capital gains treatment. Cf. Lester B. Martin, 26 T.C. 100 (1956); Mary Miller, 22 T.C. 293 (1954), aff'd, 226 F.2d 618 (6 Cir. 1955). On the other hand, taxpayers acknowledge that if Federal adopted and continued the profit-sharing and benefit plan as its own during 1956 and 1957, Section 402(a)(2) does not apply. Cf. Clarence F. Buckley, 29 T.C. 455 (1957); Edward Joseph Glinske, 17 T.C. 562 (1951).
 
 
 8
 By the terms of the trust agreement which created the profit-sharing and benefit plan, Federal could have allowed the program to lapse on March 29, 1956 and could have then distributed the proceeds to its employees. Instead, it expressly adopted and continued the plan until December 31, 1957. Accordingly, the distribution to taxpayers was not 'on account of (their) death or other separation from the service,' and Section 402(a)(2) does not apply.[1] Taxpayers argue that the adoption was involuntary, inasmuch as Federal continued the plan solely to avoid committing an unfair labor practice. We decline to consider this argument, however, for it would require courts to explore the by-ways of the National Labor Relations Act, and to disentangle the motives of the employer, in order to determine whether Section 402(a)(2) applies. The law concerning this provision is already sufficiently complicated. See 4 Mertens, Federal Income Taxation 25.B.52 (1960).[2]
 
 
 9
 Affirmed.
 
 
 
 [1]
 We imply nothing about whether Section 402(a)(2) would apply if the trust agreement or a collective bargaining agreement had required Federal to continue the plan until December 31, 1957
 
 
 [2]
 We need not reach the government's alternative contention that Section 402(a)(2) is inapplicable because the plan was not wholly terminated in 1958