Gary L. PRICE and Lois W. Price, Plaintiffs,

v.

UNITED STATES of America, Defendants.

No. C–75–512–G.

United States District Court, M. D. North Carolina, Greensboro Division.

March 2, 1978.

---

Richard C. Forman, of Forman & Zuckerman, Greensboro, N. C., for plaintiffs.

H. M. Michaux, Jr., U. S. Atty., Greensboro, N. C., L. Bruce Locke and Helen E. Marmoll, Dept. of Justice, Washington, D. C., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

HIRAM H. WARD, District Judge.

### Findings of Fact

This matter involves a lump sum distribution from a profit-sharing pension fund. The controlling issue before the Court is whether the cash distribution made in 1971 was properly taxed as ordinary income or whether the plaintiffs are entitled to capital gains treatment on that amount.

On January 1, 1968, Gary L. Price was a nonsalaried employee of P. Lorillard Company (Lorillard) at the Lorillard plant in Greensboro, North Carolina, and was a member of Local 317 of Tobacco Workers International Union. (Stip. II, A and B). Effective January 1, 1968, following assurances to and negotiations with the Tobacco Workers International Union, Lorillard adopted a Profit Sharing Plan meeting the requirements of Section 401(a) of the Internal Revenue Code of 1954. (Stip. II, C and D; Exhibits 2 and 3).

In early 1968 Lorillard was reincorporated under the laws of the State of Delaware and assumed the new name of Lorillard. The Profit Sharing Plan continued in force as an obligation of the new corporate entity.

On November 26, 1968, Loew's Theatres, Inc., (Loew's) acquired all of the stock of Lorillard. After this acquisition, Lorillard's obligations under the profit-sharing plan remained unchanged. (Stip. II, G). On July 10, 1969, the decision was made to merge Lorillard into Loew's, thereby terminating Lorillard's existence as a separate corporate entity. The merger became effective on July 11, 1969, and thereafter the business previously conducted by Lorillard as a separate corporate entity was conducted by the Lorillard Division of Loew's. (Stip. II, I). Most of the former Lorillard employees, including Mr. Price, continued in their same jobs, but as employees of Loew's instead of Lorillard.

Along with the other assets and obligations of Lorillard, the Profit Sharing Plan became an obligation of the Lorillard Division of Loew's. While the management of Loew's neither intended nor expected to terminate the profit-sharing plan at the time of the merger, it was the understanding of the management of Loew's that the profit-sharing plan could not be terminated without having the effect of opening up the union contract for renegotiation. (Stip. II, F; Shays' Affidavit; and Exhibits 15 & 16). On July 11, 1969, the board of directors of Loew's resolved "to continue for the present the profit-sharing plan of Lorillard Corporation." (Stip.Exh. 8).

Loew's made no contribution to the plan in 1969, but did provide the required funding in 1970. (Stip.Exh. 8).

At the end of 1969 Loew's began a study of all profit-sharing plans under its control. This study lasted throughout 1970 and into 1971. Pursuant to this study Loew's deter-

mined that one integrated employee-benefit plan would be better than two dissimilar plans. (Stip. II, M). Consistent with this study, on May 11, 1971, Loew's decided to terminate the Lorillard profit-sharing plan effective December 31, 1970, and to implement a new profit-sharing plan for all employees of Loew's effective September 1, 1970. (Stip. II, M and N).

The termination of the Lorillard profit-sharing plan and the implementation of the new Loew's profit-sharing plan were done in conjunction with collective bargaining with the various unions representing the nonsalaried employees of Loew's. (Stip. II, O).

On April 15, 1972, the plaintiffs timely filed their federal income tax return for the calendar year 1971 and reported as ordinary income the amount of $1,663.11, which had been received by Gary L. Price as a distribution upon the termination of the profit-sharing plan. (Stip. I, A). (Mrs. Price is a plaintiff solely because she joined with her husband in filing a joint federal income tax return.) On July 29, 1974, the plaintiffs timely filed an amended federal income tax return for the calendar year 1971, in which they reported the amount of $1,663.11 as capital gains and requested a refund of $107.75. (Stip. I, B). On September 2, 1974, the Internal Revenue Service refunded to the plaintiffs the amount of $107.75. (Stip. I, C).

On February 24, 1975, the Commissioner of Internal Revenue timely issued to the plaintiffs a statutory notice of deficiency for the calendar year 1971 in the amount of $107.75. On June 13, 1975, this amount plus $19.58 in interest was assessed against the plaintiffs. (Stip. I, D and E). On April 25, 1975, the plaintiffs repaid the $107.75 and on June 26, 1975, they paid the $19.58. (Stip. I, F). On April 25, 1975, the plaintiffs timely filed a claim for refund of the amount of $107.75. (Stip. I, G). On December 4, 1975, the Commissioner of Internal Revenue disallowed the claim for refund. (Stip. I, H). On December 1, 1975, the plaintiffs timely instituted this suit for refund of taxes paid plus interest. (Stip. I, I).

## Discussion

Section 402(a)(1) of the Internal Revenue Code of 1954 (26 U.S.C. § 402(a)(1)), as applicable for the years in issue provides that amounts distributed from a profit-sharing plan, such as the one in issue in this case, are generally taxed as ordinary income. Section 402(a)(2) provides that distributions will be taxed as capital gains "if the total distributions payable with respect to any employee are paid to the distributee within 1 taxable year of the distributee on account of the employee's death or other separation from the service . . . ." The distribution of $1,663.11 to Gary Price was not on account of his death and, therefore, the sole issue is whether or not the distribution was "on account of" the separation of Gary Price from the service of his employer.

Mary Miller, 22 T.C. 293 (1954), aff'd per curiam, 226 F.2d 618 (6th Cir. 1955), and Lester B. Martin, 26 T.C. 100 (1956), provide that a distribution incident to the change of ownership and liquidation of the taxpayers' corporate employer and the termination of its retirement plan qualify as a lump sum distribution eligible for capital gains treatment under Section 402(a)(2) even though the taxpayer continues to work for the successor corporation. The rationale is that the employee separated from the service of the employer where the corporate employer no longer exists.

Revenue Rule 58–95 states that the liquidation merger of a subsidiary following an initial purchase of the subsidiary's stock for cash by the surviving corporation would be "a separation from service." This is exactly what happened in the instant case with Lorillard and Loew's.

The exact force of Revenue Ruling 58–95 is open to some question. See United States v. Johnson, 331 F.2d 943 (5th Cir. 1964); United States v. Haggart, 410 F.2d 449 (8th Cir. 1969). However, it must be concluded that Revenue Ruling 58–95 is valid for the time relevant to this action. This is true for two reasons. First, Revenue

Ruling 72–44 which specifically revoked Revenue Ruling 58–95 did so only with respect to periods after September 18, 1972. Second, after much argument to the contrary in its brief, the government's attorney admitted in open court during oral argument that Revenue Ruling 58–95 would apply in the instant situation.

■ However, this alone does not entitle the plaintiffs to treat the distribution as capital gains rather than as ordinary income. In *Funkhouser v. Commissioner of Internal Revenue*, 375 F.2d 1 (4th Cir. 1967), it was held that although there had been a bona fide change in the ownership of the business, where the merged and the surviving corporations had carefully and specifically taken contractual steps necessary to continue the merged corporation's pension trust under the surviving corporation, the voluntary distribution at the request of the taxpayer would not be subject to the favorable treatment of capital gains under Section 402(a)(2) of the Internal Revenue Code. The rule which has developed is that where a pension plan is expressly adopted by the surviving corporation, the employees thereunder are denied "separation from the service" status for any distribution which may follow.

In *Rybacki v. Conley*, 340 F.2d 944 (2d Cir. 1965), the court held that under the terms of a trust agreement which created a profit-sharing and benefit plan for employees, where the successor employer could have allowed the program to lapse at a stated date but instead expressly adopted the plan and continued it until a later date and then determined to discontinue the plan, distributions from the plan were taxable as ordinary income rather than capital gains.

In January 1954, National Folding Box Company acquired assets of another corporation which included an employees' profit-sharing plan. The fund required annual contributions. In the event of merger the successor corporation could either adopt the plan or by inaction allow the plan to lapse after ninety days. In December 1955, National merged into its parent corporation,

Federal Paper Board Company. The board of directors of Federal had already expressly adopted the profit-sharing plan effective the date of the merger. The plan continued until December 6, 1957, when the board of directors of Federal determined to end the company's contributions to the plan. The employees had the option to either withdraw the money or transfer the money into a new pension plan. The taxpayers while remaining with Federal decided to withdraw their share of the plan.

By the terms of the trust agreement which created the profit-sharing and benefit plan, Federal could have allowed the program to lapse on March 29, 1956 and could have then distributed the proceeds to its employees. Instead, it expressly adopted and continued the plan until December 31, 1957. Accordingly, the distribution to taxpayers was not "on account of [their] death or other separation from the service," and Section 402(a)(2) does not apply.[1] Taxpayers argue that the adoption was involuntary, inasmuch as Federal continued the plan solely to avoid committing an unfair labor practice. We decline to consider this argument, however, for it would require courts to explore the by-ways of the National Labor Relations Act, and to disentangle the motives of the employer, in order to determine whether Section 402(a)(2) applies. The law concerning this provision is already sufficiently complicated. See 4 Mertens, Federal Income Taxation § 25.-B.52 (1960).

340 F.2d at 946.

In footnote 1 the court stated:

We imply nothing about whether Section 402(a)(2) would apply if the trust agreement or a collective bargaining agreement had required Federal to continue the plan until December 31, 1957.

In *Smith v. United States*, 460 F.2d 1005 (6th Cir. 1972), the Sixth Circuit held that where a corporate employer which had a profit-sharing plan was acquired by another corporation in 1964 and a new board of directors resolved to discontinue the profit-sharing plan in 1965 and made a lump sum

distribution in full settlement of taxpayers' interests, taxpayers were entitled to treat the distribution as capital gain even though the former employer was maintained as a wholly owned subsidiary for three years before it was merged into the parent.

Specifically the taxpayers were beneficiaries of a pension plan under Adkins Cargo Express, Inc. Gateway Transportation Company, Inc., purchased the Cargo stock in 1964. On July 14, 1965, Cargo's new board of directors, elected by Gateway, resolved to discontinue the profit-sharing plan. Full distribution was made to all beneficiaries in December 1965. Cargo was maintained as a wholly owned subsidiary of Gateway until July 1968 when it was merged into Gateway. Taxpayers continued to work for Cargo and worked for Gateway when the merger was completed.

In its general discussion the court stated:

The decided cases and revenue rulings which discuss this issue have been accurately described as having a "bramble bush character."

460 F.2d at 1007.

In reversing the district court, the circuit court noted that the parties stipulated and that the district court found that Gateway intended at the time it acquired all of the Cargo stock to merge Cargo into Gateway after the acquisition. It was further stipulated that tax and business considerations were responsible for the delay of the merger until 1968. The district court held that it did not seem reasonable to assert that a "separation from employment" took place in 1965 based on a future contingent possible liquidation. The Appeals Court held that the district court had applied the wrong test.

The statute required it to determine only whether the distributions were on account of the "separation from the service" of the employer, and it is clear that they were, even though the employer formally went out of existence after the date of distribution. The only time limitation in the statute requires that the total distributions payable to any employee be paid within one taxable year of the distributee so long as the payment shall be made on account of the separation from the service, and there is no requirement that the separation from the service occur before the distribution occurs or that both events must occur within the same year. It cannot be gainsaid that the trust was terminated because of Gateway's acquisition of Cargo and its ultimate absorption of substantially all of Cargo's employees, including taxpayers.

460 F.2d at 1016.

The court refused to consider arguments based on *Rybacki v. Conley,* 340 F.2d 944 (2d Cir. 1965), where the acquiring corporation expressly adopted the plan and continued it for two years before it was terminated and the distributions were made. The *Smith* court stated:

When the plan is adopted by the successor corporation, it is clear that distributions on account of a later decision to terminate the plan are not on account of a separation from service. We need not decide the effect of a stipulation, in a case like *Rybacki,* that the plan would be continued only a certain length of time and then terminated as a result of the liquidation of the former employer.

460 F.2d at 1017.

█ The present case is somewhere at a point between *Rybacki* and *Smith.* The controlling question is "Was there an adoption of the profit-sharing plan by Loew's?" Because it has been stipulated that Loew's believed that it could not terminate the plan without the specific approval of the union, it follows that merely continuing the plan following the merger does not constitute an adoption. While it cannot be denied that the thrust of the merger was to at least temporarily maintain the status quo, that alone should not arise to the level of an adoption. To be effected an adoption requires some conduct similar to a ratification. Thus it follows that the plan would continue in limbo until Loew's either adopted it through ratification at the next collective bargaining session or declined to adopt the plan by holding negotiation sessions with the unions to

effectuate that result. Since the latter was the course taken by Loew's, it seems clear that no adoption has taken place.

*Conclusions of Law*

1. This Court has jurisdiction over the parties and the subject matter of this action. 26 U.S.C. §§ 6511, 6532, 7422; 28 U.S.C. § 1346(a)(1).

2. The distribution of $1,663.11 to Gary L. Price was made on account of his separation from the service of Lorillard. Section 402(a)(2), Internal Revenue Code; Revenue Ruling 58–95, 1958–1 C.B. 197. There was no adoption of the Lorillard plan by Loew's.

### ORDER

It is, therefore, ORDERED that the plaintiffs recover from the defendant the sum of $107.75 plus interest. A judgment will be entered accordingly.