JAMES F. AND RUTH H. STURDIVANT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sturdivant v. Commissioner
Docket No. 8252-77.
United States Tax Court
T.C. Memo 1980-38; 1980 Tax Ct. Memo LEXIS 547; 39 T.C.M. (CCH) 1022; T.C.M. (RIA) 80038; February 11, 1980, Filed *547 In 1973, petitioner-husband received a distribution from the trust of a pension plan. In August of 1974, respondent revoked, for 1972 and subsequent years, his prior determination that the plan was qualified under section 401(a) and that the trust was exempt under section 501(a). The correctness of this retroactive revocation is not disputed. Held: a portion of the 1973 distribution is entitled to special tax treatment (largely long-term capital gain) under section 402(a)(2), I.R.C. 1954. Woodson v. Commissioner, 73 T.C.     (Feb. 5, 1980). James F. Sturdivant, pro se. Dean F. Chatlain, for the respondent. CHABOT
MEMORANDUM OPINION CHABOT, Judge:* Respondent determined deficiencies in Federal individual income tax against petitioners as follows: Year
Deficiency
1972
$6,034.55 [1] *548 1973
4,985.29
The single issue for our decision is whether any part of a 1973 pension plan distribution is entitled to special tax treatment (largely long-term capital gain) under section 402(a)(2), [2] even though the distribution was made by a nonexempt trust which was part of a nonqualified plan. The case was submitted on the pleadings and a stipulation of facts; the stipulation and the stipulated exhibits are incorporated herein by this reference. When the petition in this case was filed, petitioners, James F. Sturdivant, (hereinafter sometimes referred to as "James"), and Ruth H. Sturdivant, husband and wife, were residents of Shreveport, Louisiana. In February 1948, Master Products Company, Inc. (hereinafter sometimes referred to as "MPC") was organized under Louisiana law. From the date of MPC's incorporation until February 1, 1973, James was president and a 50-percent shareholder of MPC. During this same period, Harry A. Cory (hereinafter sometimes referred to as "Cory") was the vice-president *549 of MPC. Between January 1, 1961, and February 1, 1973, James and Cory consistently received the highest amounts of annual compensation of all of MPC's employees. On January 2, 1961, MPC's board of directors adopted the Master Products Company, Inc., Pension Plan (hereinafter sometimes referred to as "the Plan"). The Plan was a money-purchase pension plan. The plan agreement was executed by Cory on behalf of MPC. This agreement also established one trust (hereinafter sometimes referred to as "the Trust") embodied in the Plan. Houston A. Boyett was the sole trustee. The agreement provided that MPC could remove any trustee and could appoint a successor trustee. The agreement provided that MPC was to contribute annually to the Trust on behalf of each plan participant for each year an amount equal to 9-3/8 percent of the participant's compensation for the year in excess of $4,800.00. In April of 1961, MPC requested a determination from the Internal Revenue Service that the Plan was qualified under section 401(a). On July 31, 1961, a determination letter was issued by the Internal Revenue Service stating that the Plan was qualified under section 401(a) and that the Trust was exempt *550 from Federal income tax under section 501(a). The plan agreement compemplated that contributions to the Trust would be used to pay premiums on insurance policies on behalf of the participants. Trust administration costs were to be deducted proportionalty from each participant's account. By an amendment adopted January 2, 1962, and made effective January 1, 1962, the trustee was allowed "to use a Federal Savings & Loan Co. or a qualified Mutual Fund for the funding of contributions." This amendment was adopted in order "to give the trustee more lattitude [sic] in the funding of contributions". On February 1, 1973, petitioners sold their stock in MPC and James elected early retirement from MPC. Since electing early retirement, James has been employed by MPC as a consultant. On August 8, 1974, the district director of Internal Revenue issued a letter stating that the Plan was disqualified and the Trust was not exempt for 1972 and subsequent years. In the letter, the district director gave the following three reasons for his conclusion: (1) the Plan's annual contribution rate of 9-3/8 percent compensation in excess of $4,800 exceeded the maximum contribution rate of 7 percent of *551 compensation in excess of the integration level permitted by section 14.01 of Rev. Rul. 71-446, 1971-2 C.B. 187[3] *552 ; (2) as of the end of 1972, $7,733.49 in the Trust had not been allocated to participants in accordance with a definite formula, in violation of section 1.401-1(b)(1), Income Tax Regs., as interpreted in Rev. Rul. 70-125, 1970-1 C.B. 87; and (3) the only trustee, Cory, was also a beneficiary under the Trust, in violation of section 1784 of the Louisiana Trust Code as amended. All contributions under the Plan were made by MPC as employer. On December 31, 1972, the value of James' interest in the Trust was $16,327.07. During 1972, MPC contributed $956.25 to the Trust on behalf of James. Petitioners did not report any taxable income from the Trust on their original 1972 and 1973 returns. Petitioners filed an amended 1972 return reporting $956.25 as additional ordinary income on account of the 1972 contribution. The parties' stipulation is quite sparse. They stipulate that James "constructively received $15,370.82 from the non-exempt trust of Master Products Company, Inc. during the taxable year 1973." Since *553 the stipulation also states that on December 31, 1972, the value of James' interest in the Trust was determined to be $16,327.07, and since the parties argue only about the consequences of a distribution from a trust which was once exempt but which was not exempt at the time of the distribution, we assume that (1) the entire $16,327.07 was distributed in 1973, (2) this amount represented the entire balance to James' credit [4] in the Trust, (3) James' stipulated election of early retirement and employment by MPC as a consultant constitutes a separation from the service of MPC, [5] (4) the distribution was made on account of this separation from the service of MPC, [6] *554 and (5) only $15,370.82 of the distribution is at issue here because the remaining $956.25, which petitioners took into income for 1972, is treated as an employee contribution by James. The parties agree the Plan was not qualified for 1972 and thereafter, and that, accordingly, the Trust was not exempt after December 31, 1971. Petitioners assert that $15,370.82 of the 1973 distribution is entitled to favorable long-term capital gain treatment under section 402(a)(2), since it represents distribution of the amounts credited to James' account during the period the Trust was tax-exempt under section 501(a). Respondent asserts that since the distribution was from a nonexempt trust it is taxable as ordinary income under section 402(b). Respondent contends that the long-term capital gain treatment granted by section 402(a)(2) is applicable only to distributions from employees' plan trusts that are exempt during the year of distribution. We agree with petitioners that the portion of the 1973 distribution attributable to the period before 1972 is entitled to the favorable tax treatment provided by section 402(a)(2). [7] *555 Section 402(a)(1)[8] provides the general rule for the taxability of a beneficiary of an exempt employees' trust--distributions are to be taxed under section 72, which generally provides for current taxation of distributions as ordinary income. The statute provides for lump sum distributions, under section 402(a)(2). [9] *556 Section 402(a)(5)[10] *558 limits the section 402(a)(2) long-term capital gain treatment in the case of distributions paid after December 31, 1969. As applied to this case, post-1969 employer contributions are not to receive section 402(a)(2) long-term capital gain treatment.Instead, these amounts are to be taxed under the seven-year *557 averaging rule of section 72(n). [11] *559 *560 Section 402(b)[12] *561 provides that distributions from a nonexempt trust are to be taxed under section 72, which generally provides for current taxation of distributions as ordinary income. The Court has recently examined the apparent conflict between the interpretation of sections 402(a)(2) and 402(b) in Greenwald v. Commissioner,366 F.2d 538 (CA2 1966), *562 revg. in part 44 T.C. 137 (1965), and Epstein v. Commissioner,70 T.C. 439 (1978), and has concluded that the Court will follow the Court of Appeals opinion in Greenwald and will no longer follow Epstein. Woodson v. Commissioner, 73 T.C.     (Feb. 5, 1980). On the basis of Woodson, we hold that the portion of the 1973 distribution that is attributable to the period before 1972 is entitled to the favorable tax treatment provided by section 402(a)(2). To take account of the fact that the record appears to be inadequate to enable us (1) to apply section 402(a)(5), (see note 7, supra) and (2) to determine how much of the 1973 distribution is attributable to the period before 1972, Decision will be entered under Rule 155. Footnotes
*. By order dated July 21, 1978, the Chief Judge reassigned this case from Judge Charles R. Simpson to Judge Herbert L. Chabot↩ for disposition.
1. The asserted deficiency for 1972 reflects respondent's alternative position that a pension plan distribution was received in 1972. The parties have stipulated that the distribution in issue was constructively received in 1973 (rather than 1972), and respondent concedes that there is no deficiency for 1972.
2. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code as in effect for 1973, the only taxable year in issue.↩
3. When the Plan was first ruled tax-exempt, in 1961, respondent had ruled that such a plan was permitted to provide employer contributions of up to 9-3/8 percent of compensation in excess of $4,800. (Sec. 14 of Mim. 6641, 1951-1 C.B. 41, 50, modified by sec. 6 of Rev. Rul. 61-75, 1961-1 C.B. 140, 141.) In 1968, in connection with proposed amendments to the regulations, respondent proposed to lower the permitted employer contribution rate to 6 percent of compensation in excess of the maximum Social Security wages base. (Announcement 68-49, 1968-29 I.R.B. 27.) In Rev. Rul. 69-4, 1969-1 C.B. 118, 122-123, respondent ruled under the newly-amended regulations that the 6-percent limit was in effect. However, plans which were in effect on July 5, 1968 (the day before the publication of the proposed amendments) were given until January 1, 1972, to conform to the 6-percent limit. (1969-1 C.B. at 124-125.) The 6-percent limit was raised to 7 percent by section 14 of Rev. Rul. 71-446, 1971-2 C.B. 187, 194, in conformity with regulations amendments published on July 22, 1971. Plans which were in effect on July 5, 1968 (and which were still at the old 9-3/8-percent rate), were given until April 1, 1972, to conform to the 7-percent limit. (1971-2 C.B. at 199↩.)
4. See sec. 402(a)(3)(C)↩, as in effect for 1973, before its repeal by sec. 2005(c)(1) of the Employee Retirement Income Security Act of 1974 (Pub. L. 93-406, 88 Stat. 991). 5. f. Bolden v. Commissioner,39 T.C. 829 (1963); see also Schlegel v. Commissioner,46 T.C. 706, 708↩ (1966). 6. Cf. Funkhouser v. Commissioner,44 T.C. 178, 184-185 (1965), affd. 375 F.2d 1, 6↩ (CA4 1967).
7. Neither side discusses the effect of section 402(a)(5), as in effect for 1973 (note 10, infra), which requires distributions made before 1974 to be allocated between benefits accrued in pre-1970 plan years and benefits accrued in post-1969 plan years.
8. SEC. 402. TAXABILITY OF BENEFICIARY OF EMPLOYEES' TRUST. (a) Taxability of Beneficiary of Exempt Trust. -- (1) General rule. -- Except as provided in paragraphs (2) and (4), the amount actually distributed or made available to any distributee by any employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to him, in the year in which so distributed or made available, under section 72↩ (relating to annuities). * * * 9. SEC. 402. TAXABILITY OF BENEFICIARY OF EMPLOYEES' TRUST. (a) Taxability of Beneficiary of Exempt Trust. -- * * *
(2) Capital gains treatment for certain distributions. -- In the case of an employees' trust described in section 401(a), which is exempt from tax under section 501(a), if the total distributions payable with respect to any employee are paid to the distributee within 1 taxable year of the distributee on account of the employee's death or other separation from the service, or on account of the death of the employee after his separation from the service, the amount of such distribution, to the extent exceeding the amounts contributed by the employee (determined by applying section 72(f)), which employee contributions shall be reduced by any amounts theretofore distributed to him which were not includible in gross income, shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months. * * * Section 402(a)(2)↩ was amended by section 2005(b)(1) of the Employee Retirement Income Security Act of 1974 (Pub. L. 93-406; 88 Stat. 990) and sections 1402(b)(1)(C) and 1402 (b)(2) of the Tax Reform Act of 1976 (Pub. L. 94-455; 90 Stat. 1731, 1732); none of the amendments affects the year in issue.
10. SEC. 402. TAXABILITY OF BENEFICIARY OF EMPLOYEES' TRUST. (a) Taxability of Beneficiary of Exempt Trust. -- * * *
(5) Limitation on capital gains treatment. -- The first sentence of paragraph (2) shall apply to a distribution paid after December 31, 1969, only to the extent that it does not exceed the sum of-- (A) the benefits accrued by the employee on behalf of whom it is paid during plan years beginning before January 1, 1970, and (B) the portion of the benefits accrued by such employee during plan years beginning after December 31, 1969, which the distributee establishes does not consist of the employee's allocable share of employer contributions to the trust by which such distribution is paid. The Secretary or his delegate shall prescribe such regulations as may be necessary to carry out the purposes of this paragraph.
This provision was repealed, as to distributions made after December 31, 1973, by sections 2005(c)(2) and 2005(d) of the Employee Retirement Income Security Act of 1974 (Pub. L. 93-406, 88 Stat. 991, 992). In effect, the amendment of section 402(a)(2) by section 2005(b)(1) of that Act (see note 9, supra) replaced both the long-term capital gain rule of section 402(a)(2) (as set forth in note 9, supra) and time-allocation rule of section 402(a)(5)↩. 11. SEC. 72.ANNUITIES; CERTAIN PROCEEDS OF ENDOWMENT AND LIFE INSURANCE CONTRACTS. * * *
(n) Treatment of Total Distributions. -- (1) Application of subsection. -- (A) General rule. -- This subsection shall apply to amounts-- (i) distributed to a distributee, in the case of an employees' trust described in section 401(a) which is exempt from tax under section 501(a), or (ii) paid to a payee, in the case of an annuity plan described in section 403(a), if the total distributions or amounts payable to the distributee or payee with respect to an employee (including an individual who is an employee within the meaning of section 401(c)(1)) are paid to the distributee or payee within one taxable year of the distributee or payee, but only to the extent that section 402(a)(2) or 403(a)(2)(A) does not apply to such amounts. (B) Distributions to which applicable. -- This subsection shall apply only to distributions or amounts paid-- (i) on account of the employee's death, (ii) with respect to an individual who is an employee without regard to section 401(c)(1), on account of his separation from the service, (iii) with respect to an employee within the meaning of section 401(c)(1), after he has attained the age of 59 1/2 years, or (iv) with respect to an employee within the meaning of section 401(c)(1), after he has become disabled (within the meaning of subsection (m)(7)). * * * (2) Limitation of tax. -- In any case to which this subsection applies, the tax attributable to the amounts to which this subsection applies for the taxable year in which such amounts are received shall not exceed whichever of the following is the greater: (A) 5 times the increase in tax which would result from the inclusion in gross income of the recipient of 20 percent of so much of the amount so received as is includible in gross income, or (B) 5 times the increase in tax which would result if the taxable income of the recipient for such taxable year equaled 20 percent of the amount of the taxable income of the recipient for such taxable year determined under paragraph (3)(A). * * * (4) Special rule for employees without regard to section 401(c)(1). -- In the case of amounts to which this subsection applies which are distributed or paid with respect to an individual who is an employee without regard to section 401(c)(1), paragraph (2) shall be applied with the following modifications: (A) "7 times" shall be substituted for "5 times", and "14 2/7 percent" shall be substituted for "20 percent". * * *
(C) No portion of the total distributions or amounts payable (of which the amounts distributed or paid are a part) to which section 402(a)(2) or 403(a)(2)(A) applies shall be taken into account. This provision was repealed, as to distributions made after December 31, 1973, by sections 2005(c)(3) and 2005(d) of the Employee Retirement Income Security Act of 1974 (Pub. L. 93-406, 88 Stat. 991, 992). In effect, the amendment of section 402(e) by section 2005(a) of that Act (88 Stat. 987) replaced section 72(n)↩.
12. SEC. 402. TAXABILITY OF BENEFICIARY OF EMPLOYEES' TRUST. * * *
(b) Taxability of Beneficiary of Nonexempt Trust. -- Contributions to an employees' trust made by an employer during a taxable year of the employer which ends within or with a taxable year of the trust for which the trust is not exempt from tax under section 501(a) shall be included in the gross income of the employee in accordance with section 83 (relating to property transferred in connection with performance of services), except that the value of the employee's interest in the trust shall be substituted for the fair market value of the property for purposes of aplying such section. The amount actually distributed or made available to any distributee by any such trust shall be taxable to him in the year in which so distributed or made available, under section 72 (relating to annuities), except that distributions of income of such trust before the annuity starting date (as defined in section 72(c)(4)) shall be included in the gross income of the employee without regard to section 72(e)(1)↩ (relating to amount not received as annuities). A beneficiary of any such trust shall not be considered the owner of any portion of such trust under subpart E of part I of subchapter J (relating to grantors and others treated as substantial owners).